## UNITED STATES

v.

**Bradley N. HENRY, 175–48–3814, Equipment Operator Constructionman (E–3), U.S. Navy.**

### NMCM 93 1617.

U.S. Navy–Marine Corps Court of
Military Review.

Sentence Adjudged 20 Sept. 1985.

Decided 31 May 1994.

LT L.M. Higdon, JAGC, USNR, Appellate Defense Counsel.

MAJ Laura L. Scudder, USMC, Appellate Government Counsel.

Before MOLLISON, Senior Judge, and DeCICCO and GUERRERO, JJ.

DeCICCO, Judge:

This case is the latest of several that this Court has recently reviewed that involve inordinate delay after trial. Here, due to the loss of the original record of trial, the convening authority did not act under Article 60, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 860, until nearly *eight years* after trial. The appellant requests that we set aside the findings and the sentence because he has been denied his right to speedy review and because the prosecution failed to prove his guilt beyond a reasonable doubt at trial. Based on case law and the facts of this case, we decline to do so and affirm.

### Background

A special court-martial composed of officer and enlisted members convicted the appel-

lant of damaging and wrongfully appropriating a two and a half ton cargo truck in violation of Articles 108 and 121, UCMJ, 10 U.S.C. §§ 908 and 921. His sentence included a bad-conduct discharge, confinement for 6 months, reduction to pay grade E–1, and forfeiture of $310.40 pay per month for 6 months.[1] Trial concluded on 20 September 1985, and the military judge authenticated the record of trial on 20 November 1985.[2]

At some point following these events, the original record of trial was lost. There is no explanation surrounding its loss, but a copy of the record was eventually located. The convening authority finally approved the sentence, and except for the part extending to the bad-conduct discharge, ordered it executed on 9 July 1993, or 2,849 days after trial.[3] The case is now before us for review under Article 66, UCMJ, 10 U.S.C. § 866. The appellant has raised three assignments of error.[4]

### Sufficiency of the Evidence

■ The appellant assigns as error that the prosecution failed to prove his guilt of the charged offenses beyond a reasonable doubt. This argument is based on the fact that there was some testimony at trial that there were two persons in the cab of the truck as it proceeded out the gate of the base, that another Sailor, who was upset, was present at the crash scene and that he, rather than the appellant, may have been the driver of the truck.

We are satisfied of the appellant's guilt beyond a reasonable doubt. Article 66(c), UCMJ; *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). Ample testimony established that on the day of the incident, the appellant became intoxicated after attending both a command party and a social function at another sailor's home.[5] After returning to the barracks at Naval Air Station, Bermuda, the appellant told Constructionman Raymond that he wanted to "call the States." When the appellant learned that the base operator's office had closed, he stated that he wanted to take a truck to an off-base residence to place the call. Raymond told the appellant he was not permitted to do so due

---

1. We have noted that the adjudged amount of forfeitures of pay was not stated in whole dollars as required by Rule for Courts–Martial 1003(b)(2), and that this was not addressed in the convening authority's action. We will correct this error in our decretal paragraph.

2. Upon reviewing the record, it was noted that the initial session of this case, consisting of 8 pages of the record, was not authenticated by the first military judge assigned to the case. His authentication has been obtained. The authentication referred to above is by the second military judge assigned who presided over the rest of the trial.

3. Upon review of the submitted copy of the original record, we noted that it lacked the reverse side of the charge sheet, the convening order and the first modification to the convening order. The copy of the record did contain a second modification to the convening order. Pursuant to an Order of the Court, the Government produced the reverse side of the charge sheet, but was not able to produce either the convening order or the first modification. Four of the five members who sat in the appellant's case were named on the second modification. The remaining member (LTJG Endress) was most likely appointed by the original convening order dated 29 July 1985. There was no objection to his presence at trial, and when the military judge asked the members to examine the convening orders to ensure their names were correctly indicated, no

problems were noted. Record at 47. Thus, we are not faced with the situation of a known interloper who was not detailed to the court-martial, and whose absence would reduce the court-martial below the statutory minimum. *United States v. Harnish*, 12 C.M.A. 443, 31 C.M.R. 29, 1961 WL 4515 (1961); *United States v. Caldwell*, 16 M.J. 575 (A.C.M.R.1983). We therefore find no jurisdictional error due to the absence of these documents. *See United States v. Gebhart*, 34 M.J. 189 (C.M.A.1992).

4. I. APPELLANT WAS DENIED HIS RIGHT TO A SPEEDY REVIEW OF HIS COURT–MARTIAL BY THE APPROXIMATELY EIGHT YEAR DELAY BETWEEN THE SENTENCING AND THE CONVENING AUTHORITY'S ACTION.

II. THE DAMAGE TO THE CARGO TRUCK AND WRONGFUL APPROPRIATION OF THE CARGO TRUCK ALLEGED IN THE CHARGES AND THEIR SPECIFICATIONS WAS NOT PROVEN BEYOND A REASONABLE DOUBT.

III. THE JUDGE ADVOCATE GENERAL OF THE NAVY'S PREPARATION OF NAVY–MARINE CORPS COURT OF MILITARY REVIEW JUDGES' FITNESS REPORTS VIOLATES APPELLANT'S RIGHT TO AN IMPARTIAL JUDICIAL FORUM. (CITATION OMITTED.)

5. The parties stipulated that the appellant's BAC was .158 in the early morning hours the day after the incident. Prosecution Exhibit 1.

to his intoxicated status. The appellant then asked for someone else to take him, but Raymond said they all had had too much to drink to be driving. The appellant then said that he would take the truck himself. Record at 130.

Petty Officer Engel testified that he saw the appellant alone in the truck while attempting to start it. Engel said he went out and told the appellant to get out of the truck, but the appellant drove off. Three Marines observed the truck as it passed the gate at a high rate of speed on its way off-base. One testified that he saw two persons in the truck, but he could not identify them. The second testified that he saw only one person in the truck and identified the appellant as that person. The third stated he did not see who was in the truck.

Moments after the truck left the base, it overturned and came to rest on its side. The personnel who responded to the accident all stated that they found the appellant alone in the cab of the truck. He was pinned inside. A corpsman who responded asked the appellant if he was the only one involved in the accident, and the appellant responded affirmatively. Record at 219–220.

Another individual was present at the accident site who witnesses described as an American male in civilian attire. This individual was screaming for assistance for the appellant. None of the witnesses ever saw this person in the truck or exiting from it. His identity remained unknown.

The appellant argues that reasonable doubt exists on these facts. Even though there was some evidence of a second person, it does not create reasonable doubt. Two eyewitnesses saw the appellant driving the truck, and he was alone in the truck at the crash site. Also, his statement to the corpsman that he was alone adds further weight to the Government's position.

Given these circumstances, we are convinced of the appellant's guilt beyond a reasonable doubt. Additionally, we agree with the finding of the court members that the

degree of the appellant's intoxication was not so severe that he was unable to form the requisite intent to wrongfully appropriate the truck.

*Speedy Review*

■ In arguing that his right to speedy review has been violated by the nearly eight-year delay for the convening authority to act, the appellant has not alleged or demonstrated any specific prejudice. Instead, he argues that the delay is so extreme as to create prejudice *per se.* Appellant's brief at 4.

■ In order to obtain relief for unreasonable post-trial delay, an appellant must plead and demonstrate some real harm or legal prejudice flowing from the delay. *United States v. Jenkins,* 38 M.J. 287, 288 (C.M.A. 1993); *United States v. Dunbar,* 31 M.J. 70 (C.M.A.1990); *United States v. Sowers,* 24 M.J. 429 (C.M.A.1987) (summary disposition); *United States v. Bruton,* 18 M.J. 156 (C.M.A. 1984); *United States v. Shely,* 16 M.J. 431 (C.M.A.1983); *United States v. Sutton,* 15 M.J. 235 (C.M.A.1983); *United States v. Gentry,* 14 M.J. 209 (C.M.A.1982) (summary disposition); *United States v. Clevidence,* 14 M.J. 17 (C.M.A.1982); *United States v. Banks,* 7 M.J. 92 (C.M.A.1979); *United States v. Randolph,* 18 M.J. 633 (N.M.C.M.R. 1984); *United States v. Echols,* 17 M.J. 856 (N.M.C.M.R.1984). Therefore, because the appellant has not pled or demonstrated any specific prejudice, he is not entitled to any relief on account of the delay.

In the case before us, the convening authority was the commanding officer of a deployed Seabee unit. We know that the original record of trial was lost, but there is no explanation how it was lost, when it was lost, or why it took so long to realize that it was lost.

We have considered and rejected the appellant's request to find prejudice *per se* in light of the extreme delay in this case. But we view with concern the post-trial delays in this and other recent cases.[6] Even though

---

6. In addition to the cases cited, this Court has recently encountered a 4–year delay in *United States v. Harrah,* No. 93 01522 (N.M.C.M.R. 28 February 1994), a 7–year delay in *United States v.* *Roose,* No. 93 02060 (N.M.C.M.R. 14 February 1994), a 3–year delay in *United States v. Newberry,* No. 93 00644 (N.M.C.M.R. 31 January 1994), and a 5–year delay in *United States v. Hager,* No.

the appellant is not entitled to any relief, such dilatory and slipshod practices cannot be condoned.

Fortunately, the incredible delay in this case is the exception rather than the rule in Navy and Marine Corps courts-martial. But we are troubled and frustrated by the frequency that this occurs in spite of repeated condemnations from this Court and the U.S. Court of Military Appeals. There ought to be an effective system in place to monitor the review of courts-martial in the naval service, a type of post-trial "chain of custody" of the case that is centrally controlled. The automated case tracking system mentioned by Chief Judge Everett in *Bruton*[7] was apparently never fully operational, and a new system is still in the process of being established. We recommend that the Judge Advocate General do everything in his power to make this tracking system an effective tool as soon as possible. We also strongly encourage all those responsible for the post-trial processing of Navy and Marine Corps cases not to adopt or adhere to a lackadaisical attitude in completing convening authorities' actions and forwarding records for review because of the lack of a judicially imposed time deadline.[8] The net result of such an attitude can only be "a loss of respect for military law among Americans, in and out of uniform." *United States v. Prater*, 20 C.M.A. 339, 43 C.M.R. 179, 184, 1971 WL 12753 (1971) (Ferguson, J., dissenting).

The final assignment of error lacks merit. *United States v. Mitchell*, 39 M.J. 131 (C.M.A.1994).

### Disposition

Accordingly, the findings of guilty and only so much of the sentence as includes a bad-conduct discharge, confinement for 6 months, reduction to pay grade E–1, and forfeiture of $310.00 pay per month for 6 months are affirmed.

Senior Judge MOLLISON concurs.

GUERRERO, Judge (dissenting):

I respectfully dissent from my brothers in affirming the findings and sentence in this case, although I share fully in the majority's discussion of the need for the naval service to ensure a timely review process for all courts-martial. If the Judge Advocate General of the Navy does not impose such a time requirement on convening authorities then it may be time for a court imposed requirement.[1]

On the state of the record before this Court I cannot affirm either the findings or the sentence, not because I find any prejudice occasioned by the delay to appellant himself, but because the delay has resulted in what to me is an untrustworthy record.

The copy of the record of trial presented to the Court lacked the referral page of the charge sheet, the convening order and the first modification to the convening order. The referral page of the charge sheet provided by the Government at our request appears to be a copy of a copy. Contrary to the assertion made in the "certificate of substituted service" dated 26 May 1993, appellant requested at trial that the record of trial be served on him. Record at 363. There is no evidence of that. The first nine pages of the record (to include arraignment and the copy of charges and referral in the record) were not authenticated until 11 May 1994.

A copy of a record of trial tried in 1985 appeared before this Court in 1993, with no explanation of its discovery or tardiness in reaching the Court.[2] In order to give cre-

---

93 02059 (N.M.C.M.R. 24 January 1994). The inordinate delays in these cases took place in forwarding the records of trial after the convening authorities had taken their actions.

**7.** 18 M.J. at 157, n. 2.

**8.** In this regard, *see* Article 98, UCMJ, 10 U.S.C. § 898.

**1.** An outside limit of one year from date of sentence to forwarding of record to the appellate review activity, with an explanation of any extenuating circumstances, would seem adequate.

**2.** Neither the Staff Judge Advocate's recommendation nor the Convening Authority's Action mentions the date of trial. The only notice to the convening authority that something might have been amiss was the SJA's remark at paragraph 1d(6)(b): "The delay in completing the post-trial review and action on this case was the result of the apparent loss of the original record of trial.

dence to the convening authority's action taken in the eighth year after the trial I would have to presume regularity of the proceedings. On the basis of the record before us, such regularity should not be inferred. By accepting this record at face value, the Court is acknowledging and condoning dereliction of duty by several officers (the staff judge advocate who should have made a recommendation and the convening authority who should have taken action eight years ago).

Had some explanation been provided the Court of where this record languished for eight years prior to the convening authority's action in July 1993, what obstacle(s) prevented action earlier, what steps were taken to ensure no prior action had been taken on the case, where the original record was sent, whether appellant was placed on appellate leave (which might indicate a previous action), then I might be able to consider the record.

The demonstrable harm to appellant required by *United States v. Clevidence*, 14 M.J. 17 (C.M.A.1982) before remedial action is taken is moot, because we should find the procedure inadequate and refuse to speculate about what those who were responsible for acting on this case actually did.[3]

The Government should be held accountable for its delay. The lack of speedy action in this case prevents me from finding an adequate record to consider and I would therefore set aside the findings and sentence and dismiss the charges.

---

. There is no intended prejudice towards the accused."

**3.** We do know that someone did not copy the record completely, that apparently no one attempted to send the record to appellant, that no

recommendation or action or court martial promulgating order were done (or that if they were copies were not placed in the copy of the record considered here), and that apparently no record was ever sent to the appellate review activity.